Good morning, Your Honors. My name is Stephanie Bond. I represent the appellant, Adam Sheafe. I would like to reserve two minutes, if possible, for a response. This Court previously stated in the Sumner case that the government cannot be allowed to undercut the Interstate Agreement on Detainers Act and its objectives by stopping the clock in an arbitrary way. And that is exactly what we have in Mr. Sheafe's case. As the Court's aware, the government in this case took Mr. Sheafe from the Nevada State Prison by use of a writ. And granted, a writ has always been looked at as not a detainer in the cases that we have previously. Specifically, I'm talking about the Morrow case. But in this case, the way in which they used the writ, and the way in which they took Mr. Sheafe, knowing that there was a detainer on him from the Pima County Attorney's Office, in the same town of Tucson, Arizona as this Court, just a block away, the day after the Pima County Attorney's Office had accepted Mr. Sheafe by writing, saying that they were on their way to pick him up, the government instead picked him up. So are you saying there's something collusive about this between the state and the federal government? You didn't really say that in the brief. I don't have any information specifically that there was anything collusive. But I do think that this case is similar to Sumner in the sense that in that case, the Ninth Circuit didn't have any evidence that there was collusion between the prison that paroled Mr. Sumner and the government that took him by writ. But they said, you know, we can't allow these kind of things to happen, collusion or no collusion. And that's basically what this is. In Morrow and other cases like Morrow that have looked at this case, the issue has been that the writ is not a detainer, that the government files their writ, they bring the individual, the prisoner, for a temporary hearing, one hearing, and then they send them back. And that is the purpose of a writ, and that is why a writ is not a detainer. But if you look at the totality of the circumstances in this particular case, they kept Mr. Sheaf knowing that there was a valid detainer under the Interstate Agreement on Detainers Act just a block away from their courthouse, and they kept him for over two years. So you said, I think you said a second ago that normally the way a writ gets used is the person gets brought over and then gets sent right back. I've got to tell you, that's just not my experience. Well, Judge, in the cases in which... I mean, we have, I'm a district judge, obviously, and we have cases all the time in which, you know, somebody's charged in state court, they get brought over to federal court on a writ, and we keep them until we try them. Well, and I agree. And, you know, from practicing in the Arizona District Court, I agree that that happens all the time. It happens to my clients all the time. What I am saying, though, is that there's a distinction in the Morrow cases that the U.S. Supreme Court looked at, because in those cases, the writ was used as a temporary bring him over for one hearing and then send him back so that the purpose of the Interstate Agreement on Detainers Act can be effectuated. I mean, basically, the person can still get the services that they need and all the things that we have this agreement for. But when you keep somebody for two years, actually over two years, before you bring him to trial on a writ, and you know that there is a valid detainer under the Interstate Agreement on Detainers Act... How do we know that anyone in the federal court knew that there was a valid detainer also filed? Because the detainer was filed after the arraignment and the writ issued. It was filed before, but it wasn't finished or effectuated until after. That's correct. Well, there's a couple things that we can say we know for sure. I think the biggest reason we know is because Mr. Sheaf's case in the Pima County Superior Court began in 2012. It was ongoing before the federal government got its charges against Mr. Sheaf for a very similar thing. But it wasn't identical charges. They were different, separate charges. Correct, but it was a similar thing. It was a fraud case. But it wasn't arising from the same facts. No, it was not. And in fact, Mr. Sheaf had two cases pending in the Pima County Superior Court, and one was a fraud case, definitely not the same facts. I would agree with you on that. And one of them was a domestic violence, a felony domestic violence case. And then eventually there became a third case for Mr. Sheaf that I was unable to figure out exactly when that came about. But we know that in 2012, he's pending two cases. He is out on release for those cases, and he gets picked up by Nevada and prosecuted in Nevada while those cases were still going. Guaranteed, the government knew that those cases were still going. Guaranteed. They would have, of course, checked to see where Mr. Sheaf was at. They would have, of course, checked his criminal history. They would have known. Plus, Tucson is a small, small town. I mean, the courthouses are just a few blocks away from each other. The prosecutor on Mr. Sheaf's case was once at the Attorney General's office for the state. People know each other. Of course they knew. And I don't think it's a coincidence that the U.S. Marshals showed up to pick up Mr. Sheaf in Nevada the day after the Pima County Attorney's office had accepted him and written this letter saying they were on their way to pick him up. There was no reason why Mr. Sheaf should not have either been returned to Nevada knowing that this detainer was on him or just simply sent across the street so that he could be doing that case. Keeping somebody on a writ for two years obviously is not using a writ as a temporary matter. It's doing exactly what the purpose of the Interstate Agreement Act is supposed to prevent. Was there any case after Morrow that says that a writ essentially serves as the equivalent of a detainer? Judge, I believe all of the cases that I have looked at do say that the writ is not a detainer. But again, the facts are very specific in those cases as to how the writs were used. And in fact, the Supreme Court did look at the fact that this was a temporary use and not something to keep a person from having prisoner programs and so forth and getting on with their case. So if the problem was that Mr. Sheaf wasn't over in the local county jail or whatever, did the lawyer in the federal case ever say, Judge, please send him back or we'll come back when you're ready for trial, send him back over to state custody now so that he can have access to whatever? I did not see anything about that in any of the hearing transcripts that that was even discussed as to the fact. And especially once this issue was brought to life. Isn't that a problem though? I mean, if the problem that you're identifying is that, you know, he's being held in the federal court and therefore he doesn't have access to whatever he'd have access to in state custody, the fact that his lawyer, who may have been making speedy trial objections here and there, never said, hey, please send him back over to state court. I mean, I actually have lawyers do that sometimes in cases that say, you know, please send him back so he can get the state court case disposed of and bring him back after that. If that never happened, why isn't that kind of a forfeiture, waiver, whatever you want to call it? Judge, the fact that his attorney brought up the issue with the Interstate Agreement on Detainers Act, brought up the speedy trial, asserted speedy trial for Mr. Sheaf, I think shows obviously that they were asking at that point that something be done, that either the federal government honor the Speedy Trial Act and the Interstate Agreement on Detainers and allow him to have a trial, or obviously the judge could have sent him across the street and put him in custody so that the state case could go on. I mean, the state case was delayed. It literally ended and got resolved last month. It started in 2012. He was subject to this detainer the entire time ever since he went into the Nevada state custody. And that finally got resolved in November. Well, I shouldn't even say it's resolved. It's actually not resolved completely, but it's at the court of appeals level. So the state case itself has been resolved in that respect and is now pending in the court of appeals there. So for all of that time period, and the Interstate Agreement on Detainers Act specifically says that the government should not be allowed to use a writ to thwart the purpose of the act. And that's exactly what they did. I think that you have to look at the totality of the circumstances. If you look at, I mean, Morrow in the court of appeals, excuse me, the Arizona, excuse me, the United States Supreme Court, the Morrow cases were actually three cases. And in all of those cases, the writ was used the exact same way in the sense that the government requested the presence of the person. The government sent them immediately back. The government requested the person again, got them, sent them immediately back. And that was a big issue for the Morrow court. Now, obviously, in the third Morrow case, which was actually the Ford case, they found differently. And they found that in that case, there was an actual detainer. And there was a writ that was used in that case. And so I do believe that the logic of the Supreme Court is basically not that every writ is okay. If you use a writ, that's okay. It's the purpose under which you use the writ as to whether you're using it more as a detainer or you're truly using it as a writ, which is a temporary means of just bringing a person and then sending them back. And I see that I have a minute left, so unless there's other questions. No, you're a minute over your time. But Judge Lee, did you have a question? No, that's fine. It's okay? Okay. All right, thank you. May it please the Court. I'm Shelley Clemens with the U.S. Attorney's Office for the District of Arizona. In order for the Interstate Agreement on Detainers Act to apply, the federal government would have had to have secured the defendant's presence within the State of Arizona by the use of a detainer. That did not happen. The Interstate Agreement on Detainers Act simply does not apply in this case. As such, the District Court did not err in denying the defendant's motion to dismiss based on claims that it was so violated. The defense cites the Sumner case, but it's important to note that Sumner didn't actually involve a detainer. There was a detainer issued by the federal government. So it's distinguishable from the case at hand here. Defense counsel asserts both in brief and here in argument today that the government knew that there was a detainer when we issued our writ, and that it somehow kind of infers some sort of collusion. First, I don't think that that makes a difference in this particular analysis because the federal government is not bound by the actions of the State of Arizona merely by the fact that we're both within the same state boundaries. If that were the case, if there could be transfers between the state government and the federal government without their needing to acknowledge the Interstate Agreement on Detainers Act, then that would seem to be something that's getting around it. And I think that's demonstrated by the Little Omega case, wherein the District of Hawaii was reading a defendant or had actually issued a detainer for a defendant from the State of Hawaii, clearly within the same boundaries. But in that case, the Interstate Agreement Act was found to be applicable, although that wasn't the exact issue in the case, but it was found to be applicable, and the court followed its provisions in determining whether or not the time limitations had been violated. Do we know why the government used a writ in this case rather than lodging a detainer? I do not, Your Honor. However, as held by Morrow and Collins, the government does nothing wrong by using a writ instead of a detainer. The Writs Act has been in place for many, many decades, including before the Detainers Act came into place, and Congress has not seen fit or seen the need since the Detainers Act has been in place to change the Writs Act. So the government is still allowed to do that. But going back to my earlier point, I would also assert that the government could also, it has the choice to also proceed under the IAD too, right? We do, Your Honor. However, the government is allowed to pick which mechanism it wants to do, and in this case the government chose to issue a writ. The government would deny that it knew at the time it was issuing the writ that these state charges were in fact pending. Yes, we found out later after the defendant had been transferred, but at the time when we issued the writ we did not know. Mr. Sheaf's counsel was citing something about the fact that something happened one day after and all that. So what's that all about from your perspective? Your Honor, that is unfortunately just a coincidence. The Writs Act requires the government to issue their writ and then execute it quickly and efficiently. But the fact that the marshals did this at the same time, the day after the detainer magically was finally, after three months, formalized, is just a coincidence. But the government didn't do anything wrong because, again, the government can choose to proceed by means of a writ. That's how we secured his presidency. The writ's typically issued to somebody, right? So who was it issued to here? My understanding would be it would have been to the state of Nevada, which is where we brought him over from. Right. You didn't bring him from Arizona. You brought him from Nevada. Right. I would disagree that Tucson's that small of a town. I wasn't buying that either. Our caseloads are certainly not that small in any courthouse. And the fact that the prosecutor was with the AG's office, well, the AG's office is not the Pima County Attorney's office. There's no inference of knowledge going on here. So I'm just a little confused. So he's serving time in Nevada. And then when did he commit all these crimes? Like if he's in jail in Nevada, both the state of Arizona and the federal government in Arizona are also charging him with different crimes? That is correct. Because there are different types of crimes. The bank fraud and conspiracy to commit bank fraud is one type of offense which the federal government has jurisdiction over. The burglary, theft of transportation, domestic violence and kidnapping, absent special maritime jurisdiction provisions, for instance, in the income country and military bases, the government typically would not have jurisdiction over those types of cases. So we would not be involved in the investigation of those matters. They're wholly unrelated. And the government had no evidence to the record that the government at any time influenced the state in any way or that the state asked the government to issue the detainer. As this court held in Woods, absent a detainer, the Detainers Act simply doesn't apply. And the fact that a detainer was issued by the Pima County Attorney's Office doesn't bind the federal government. Under the Interstate Detainers Act, we are separate jurisdictions. That was kind of the whole point, to require a detainer when you're going state to state or state to federal so that those bad things don't happen where someone's just sitting in state prison custody somewhere, not being able to complete their program, while the detainer can sit there forever. But in this case, we used a writ, which was appropriate, and we brought him over immediately, thus alleviating any of the problems that could have occurred. But the state of Arizona and the federal government in this particular case, well, actually in all cases, are seven separate sovereigns, and we're not bound by each other's actions in this particular matter. Finally, even if this court were to find that somehow the Interstate Agreement on Detainers Act applied, there was good cause for the continuance to occur. Not all of them. I mean, the continuance to work on a defense that would be used against him was not good causes to him. Well, it might be somewhat prejudicial to him, but it does count. It doesn't alleviate the exception under 3161H7. 3161H7 allows for continuance for a co-defendant, and it talks about a reasonable period of delay when the defendant is joined for trial with another co-defendant as to whom for the trial time has not run. So once it's decided that a continuance needs to be given to one co-defendant, then the issue is with that continuance. They could have severed the trial at that point. Had defense counsel moved for that, that might show proof of some sort of prejudice. The defense counsel never moved for a separate trial. There's a talk today about two years, two years, two years, but most of that time was weighed by the defendant by either joining in continuances or filing his own motions for continue. This was a bank fraud case that had been designated complex. The two times he objected were on October 11th, he objected to continuing the trial that was set for November 7th. However, there was good cause for the extension there because the co-defendant had just been given a new attorney due to her old attorney retiring from the office. The next objection that was made was on November 9th, 2018, where the defendant objected, and that was when defense counsel for the wife had asked for the expert witness to do the evaluation to determine if she met the provisions, if he could raise the defense for battered wife syndrome. All of those things would count as good cause. At no time, though, did defense counsel ask for severance at that time. When this case was set for status on February 6th, at that time the government asked for a firm trial date to be set. At no time did defense counsel object to the date that was selected or that it be extended from the February 6th date. These were all dates where the parties were prepared to go to trial absent asking for certain extensions. He never even asserted a problem with the Interstate Agreement on Detainers Act until March 19th. At that point, after hearing all the evidence, the magistrate issued an R&R, which the district court adopted, that discussed the good cause rulings that needed to be made. In fact, the majority of this time was waived by the defendant and would not count as religious time. The extensions were necessary to achieve the proper purpose, which was to keep these trials together. The length of the extensions that he didn't waive were not so excessive, and there's absolutely no evidence that the delay impaired the defense because there's no evidence that the government sought the delay solely for the purpose of trying to flip the wife, which she eventually did. In fact, these extensions were sought by the wife. In close, Your Honor, if the Interstate Detainers Act does not apply, the government did not seek a detainer in this case. We would submit on the record. Thank you, Katza. I'll give you a minute. Your Honors, the purpose of the Interstate Agreement on Detainers Act is to encourage the expedious and orderly disposition of outstanding charges. Over two years is not expedious. It's not orderly. There's no disposition of his charges at that time. So the purpose was thwarted by the government in this case. And also, this court and the Supreme Court has said that we are to construe liberally the purpose of the IAD. And that's what I'm asking this court to do. When you issue a writ that is not a temporary manner, it's truly used as a detainer to detain a person for over two years, you are not complying with the purpose of the Supreme Court's cases in Morrow, and you're not complying with the Interstate Agreement on Detainers Act. All right. Thank you, Counsel. United States v. Sheep is submitted.
judges: Wardlaw, Kennelly, Lee